

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-13-00123-CV
No. 07-13-00124-CV
No. 07-13-00125-CV
No. 07-13-00126-CV

IN THE INTEREST OF L.G., J.G., L.A., A.A., AND D.R., CHILDREN

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 82,134-E, 76,147-E, 78,305-E, 82,569-E,
Honorable Douglas Woodburn, Presiding

October 8, 2013

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

L.G., appellant, appeals from the trial court's order terminating her parental rights to her five children, J.G., L.A., A.A., L.G. and D.R.[1] Through one issue, L.G. contends there is insufficient evidence to support the trial court's finding that termination was in the best interests of her children. We will affirm.

At the time of the final hearing, J.G. was five years old, L.A. was four, A.A. was three, L.G. was two and D.R. was nine months old. The four older children were

---

[1] The trial court also terminated the rights of each of the three fathers of the children. None of the fathers is a party to this appeal.

removed from their mother's care in April 2012 based on a report that the home was "filthy," the mother was using drugs, the children "smelled," were dirty, and generally were not getting their physical needs met. On removal, J.G. and L.G. tested positive for cocaine and A.A. tested positive for a "really high rate of meth." The drug tests on L.A. were inconclusive. Each of the children exhibited problematic behavior at the time of removal. At the time of trial, the four older children were placed in one foster home, where they continue to improve developmentally and physically.

D.R. was born on July 3, 2012 and was removed from the hospital on July 12, 2012. His mother admitted to using drugs while pregnant with D.R. He was placed in a foster home separate from his siblings. He is "thriving" and doing "very well" in the home.

Witnesses at the hearing, who included the mother, testified the mother completed about seventy percent of the services required under her service plan. There was testimony, however, that she has not completed services regarding drug treatment, minimizes her drug use, and has not found suitable housing for herself and her children.

After hearing all of the evidence, the trial court, noting the difficulty of the decision, terminated the mother's parental rights to each of her five children.

Sufficiency of Evidence to Support Termination of Parental Rights

Standard of Review

In a case to terminate parental rights brought by the Department under Family Code § 161.001, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. §161.001 (West 2012); *In re C.H.,* 89 S.W.3d 17, 23 (Tex. 2002). "Clear and convincing evidence" is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008); *In re J.F.C.,* 96 S.W.3d 256, 264 (Tex. 2002); *see also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) (holding that, because termination of parental rights is complete, final, irrevocable and divests for all time the natural right of a parent, the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights) (*citing Santosky v. Kramer*, 455 U.S. 745, 747-48, 102 S. Ct. 1388, 1391-92, 71 L. Ed. 2d 599 (1982)).

In conducting a legal sufficiency review in a parental rights termination case under section 161.001, we view all the evidence in the light most favorable to the finding to determine whether the fact finder could reasonably have formed a firm belief or conviction about the truth of the matter on which the Department bore the burden of proof. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005); *In re J.F.C.,* 96 S.W.3d at 266. We "must consider all of the evidence, not just that which favors the verdict." *In re J.P.B.,* 180 S.W.3d at 573; *In re J.F.C.,* 96 S.W.3d at 266. We "must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so," and

we "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.P.B.,* 180 S.W.3d at 573; *In re J.F.C.,* 96 S.W.3d at 266.

We must uphold termination findings against a factual sufficiency challenge if the evidence is such as would enable a reasonable jury to form a firm belief or conviction that grounds exist for termination under the statutory requirements. *In re C.H.,* 89 S.W.3d at 18-19. To reverse a case on insufficiency grounds, "the reviewing court must detail the evidence relevant to the issue of parental termination and clearly state why the evidence is insufficient to support a termination finding by clear and convincing evidence." *Id.* at 19. The Supreme Court has emphasized that, in applying the "clear and convincing" evidence standard, the appellate courts "must maintain the respective constitutional roles of juries and appellate courts." *Id.* at 26. In that regard, "[a]n appellate court's review must not be so rigorous that the only fact findings that could withstand review are those established beyond a reasonable doubt. . . . While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Id.*

The Department must establish both elements—that the parent committed one of the acts or omissions enumerated in section 161.001(1) and that termination is in the best interest of the child. *See* Tex. Fam. Code Ann. § 161.001; *In re C.H.,* 89 S.W.3d at 23. Termination may not be based solely on the best interest of the child as determined

by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Grounds

The trial court terminated the mother's rights pursuant to sections 161.001(1)(D), (E), (O), and (P).  Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O), (P) (West 2012). On appeal, the mother does not challenge the sufficiency of the evidence supporting the predicate grounds.  We therefore do not address specifically the sufficiency of the evidence to support the grounds for termination found by the trial court.  *Fletcher v. Tex. Dep't of Family & Protective Servs.*, 277 S.W.3d 58, 64 (Tex.App.—Houston [1st Dist.] 2009, no pet.); *Perez v. Tex. Dep't of Protective & Regulatory Servs.,* 148 S.W.3d 427, 433-34 (Tex.App.—El Paso 2004, no pet.).

Best Interests

There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2008). Among others, the following factors should be considered in evaluating the parent's willingness and ability to provide the child with a safe environment: the child's age and physical and mental vulnerabilities; the frequency and nature of out-of-home placements; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; and whether an adequate social support system consisting

of an extended family and friends is available to the child. Tex. Fam. Code Ann. § 263.307(b); *In re R.R.,* 209 S.W.3d at 116.

The Texas Supreme Court has set out some additional factors that courts can consider when determining the best interest of the child, including: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams,* 544 S.W.2d 367, 371-72 (Tex. 1976). This is not an exhaustive list, and a court need not have evidence on every element listed in order to make a valid finding as to the child's best interest, especially when there is undisputed evidence that the parental relationship endangered the child. *In re C.H.*, 89 S.W.3d at 27.

The evidence supporting the statutory predicate grounds for termination also is pertinent to our review; that evidence also may support a finding that the best interest of the child warrants termination of the parent-child relationship. *Id.* at 28; *In re N.R.T.*, 338 S.W.3d 667, 677 (Tex.App.—Amarillo 2011, no pet.). Further, the best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re N.R.T.,* 338 S.W.3d at 677. The best interest analysis evaluates the best interest of the child, not that of the parent. *Id.*

Our evaluation of the evidence supporting the trial court's best interest determination must begin with that showing the endangering conditions the young children experienced under their mother's care. Three of the older children tested positive for drugs at the time of their removal.[2] The mother tested positive for amphetamine, methamphetamine and marijuana while pregnant with D.R. She admitted drug use while pregnant, and acknowledged her drug use harmed her children. The mother also admitted her history of abusive relationships and admitted the children have seen domestic violence in her home.

In our view, the best-interest determination depended to a significant degree on the trial court's evaluation of the risks to the children of a return to the mother's care. And that determination, in turn, depended significantly on its evaluation of the mother's assertion she adequately had dealt with her past drug use. From our review of the evidence, we find the trial court reasonably could have concluded there was a significant risk of relapse if the children were returned to their mother's care.

The mother testified she had not used drugs since late March 2012, and her assertion was supported by negative drug tests. She presented evidence she was employed and had recently received a promotion, had successfully attended parenting classes and counseling sessions and "really wanted her children back." She acknowledged during her testimony that she did not attend the drug treatment ordered by the court, but explained her decision by telling the court, "Because I had got a job

---

[2] The Department's evidence did not attempt to explain how these three children ingested drugs so as to cause positive drug tests. The mother testified she did not use drugs in the presence of her children. Rather, she asserted, their nebulizers were kept in her closet and her children were exposed to the drugs when they received breathing treatments with the nebulizers.

and everything and I felt that I could stay clean myself. As much as I love my kids and want them back, I feel like I didn't need any help. I'm doing—you know, I'm strong enough to stay clean by myself . . . ."

But the court heard contrary testimony from other witnesses, including the Department's caseworker, a psychologist and a professional counselor, who addressed the risks of the mother's relapse. The psychologist testified he evaluated the mother and doubted the accuracy of some of her responses. He opined that she has a substance abuse problem and needs support to remain sober. He expressed the opinion that having five children returned to the mother would "add to the risks" of relapse. He also expressed concern about her past abusive relationships with men having criminal backgrounds and the risks this posed for the children should they be returned to her. The professional counselor noted similar concerns.

The mother's favorable description of her emotional strength stands in stark contrast to the endangering and dysfunctional conditions that existed in her home at the time of the removal of the four older children. The court was not required to accept her assurances that such conditions would not recur. In that regard, the court was free to take into account that the mother previously had received Department services in 2011, during a "family preservation case" closed in November 2011.

With regard to the needs of the children, a therapist for the two older children, J.G. and L.A., testified those children acted "feral" when they came into the Department's care. They were developmentally delayed in all areas, engaged in aggressive behavior such as biting, hitting, kicking and screaming, and had great difficulty with basic communication skills. Both L.A. and J.G. have been diagnosed with

"adjustment disorder with mixed disturbance of emotions and conduct." J.G., only five years old, was described as "parentified," meaning he has taken on the role of parent to his younger siblings. The therapist noted this is common in chaotic homes. L.G. was diagnosed with "pervasive developmental disorder" or "atypical autism."[3] The therapist testified these conditions can indicate neglect, abuse, and exposure to drugs in utero. The therapist noted the children are "challenging," especially L.A. as her "needs are great," she is very delayed and very sensitive to changes.

The therapist told the court the children have made "extraordinary progress" and have "exceeded [her] expectations" while in the care of their foster parents. The therapist further testified the children do not acknowledge their mother, do not call her "momma" and do not consider her when asked about people they love. They do not show that they miss their mother and do not express love for her. All of the children are "improving over time."

The court also heard testimony the four older children were doing well at the time of the final hearing. They were "more calm" and were bonded to their foster families. The foster mother testified she and her husband of twenty years wish to adopt all four of the children. She stays home with the children and ensures that each one goes to all of their appointments. She is in contact with D.R.'s foster family and the siblings have weekly visits together. D.R. is "thriving" and doing "very well" with his foster family. He is improving physically and healthy. His foster family desires to adopt him.

The record indicates the mother completed approximately seventy percent of the services set forth in her service plan. The mother described her visits with her children

---

[3] A.A. and D.R. were too young to be evaluated by the therapist.

in positive terms, saying they were "excited." But the court also heard testimony describing the visits as "chaotic" and criticizing the mother's conduct toward the children. According to the foster mother, the children behaved poorly for several days following the visits. The therapist also noted that the more contact the children have with their mother, the more their behavior, particularly that of L.A., deteriorated.

The CASA representative, the Department and an attorney ad litem all recommended that the mother's parental rights be terminated, expressing the position it was in the children's best interest. The CASA representative noted the risk that the four older children might not be placed together in the future if they were to be returned to the mother and later removed again. The mother requested a monitored return of her children, returning them in a graduated fashion so that all five were not returned at once.

Comparing the record evidence with the relevant factors bearing on their best interests, and especially considering the evidence of the seriously endangering conditions to which the children were subjected, that concerning the risks of recurrence if the mother were to resume their care, and that concerning the degree to which their needs can be met under the Department's plans for them, we conclude the trial court heard evidence legally and factually sufficient to support its best interest finding. We resolve the mother's sole issue against her and affirm the trial court's order terminating her parental rights to each of her five children.

James T. Campbell
Justice